IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Ms. Yolanda West<br>            Plaintiff,<br><br>v.<br><br><br>AGY Holding Corp. and Department Leader Vinny De Remigio,<br>            Defendants | Case No.: 1:25-cv-12904-JFA-SVH<br><br>**COMPLAINT**<br>Jury Trial Requested |

INTRODUCTION

Ms. Yolanda West, by and through her undersigned counsel, brings the following Causes of Action against Defendants in violation of 42 U.S.C. § 1981 Race Discrimination and Retaliation. Plaintiff asserts claims of Breach of Contract and Breach of Contract Accompanied with Fraudulent Intent against Defendant, AGY Holding Corp., based on the following allegations.

ADMINISTRATIVE CHARGE

Plaintiff has exhausted all administrative remedies and prerequisites prior to filing this lawsuit, including timeliness, deferral, and all other jurisdictional requirements necessary for the maintenance of this Action, as described below:

JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e (5), this being a proceeding to enforce rights and remedies secured under 42 U.S.C. § 1981 and other Federal statutes. This Court also has pendant, ancillary, and supplementary jurisdiction over so much of this action as it is based on State law.

1

2. Venue is proper in the Aiken Division because the Causes of Action arose therein, the acts and practices complained of occurred there, and it is where Defendant does business and may be found.

## PARTIES

3. Plaintiff Yolanda West is a citizen of the State of South Carolina and resides in Aiken County.

4. Defendant, AGY Holding Corp., is a business that is formed and administered under the laws of South Carolina and headquartered in Aiken County, South Carolina.

5. Defendant, Vinny De Remigio, is a State of South Carolina citizen, residing in Aiken County, South Carolina.

## FACTS

6. Plaintiff is a 44-year-old African American female who tirelessly worked for Defendant for approximately five and a half years beginning June 11, 2018, as a former M Shift EndFinding/Roving Supervisor.

7. Plaintiff had held supervisor positions in two prosperous plants before obtaining employment with AGY Holding Corp. Plaintiff will have obtained a Bachelor's Degree in Business Management and a Minor in Human Resource Management at the end of this year, making Plaintiff's knowledge and contribution to AGY Holding Corp. invaluable to the company.

8. Through hard work and diligence, Plaintiff worked her way from EFO(Q), FEH(Q), and RWI(Q) to company Supervisor. The Plaintiff thoroughly loved her job as a

supervisor and continuously showed her fellow co-workers compassion and empathy on a daily basis.

9. Plaintiff prided herself on being an exemplary employee and had never received disciplinary action regarding her performance or interactions with her co-workers, supervisor(s), or previous department heads until her retaliatory Department Leader, Defendant Vinny De Remigio, questioned Plaintiff's performance after Plaintiff refused to make unethical decisions concerning other employees.

10. After two African American females, Jasmine Jamison and Jennifer Walker, are terminated and grieve their termination and win, Defendant Vinny De Remigio meets with Plaintiff in June of 2023 upon her arrival to the M-Shift team as the African American females' supervisor, and instructs Plaintiff to target the African American females, Jasmine Jamison and Jennifer Walker, and issue write-ups continuously over several weeks to justify a second performance assault, highlighting poor work performance against Jamison and Walker. Specifically, Plaintiff was instructed to watch their reporting to work to see if they were tardy, requesting Plaintiff to rescind the approved leave for Ms. Walker, which Plaintiff had approved. Defendant De Remigio wanted Plaintiff to time Jamison and Walker's breaks for lunch and shift breaks, and if they went one minute over, to write them up. Plaintiff rebuffed Defendant De Remigio's demands and told him that no other work conditions for Caucasian employees, under her leadership, were being altered and strenuously requested by him. This response from Plaintiff enraged Defendant De Remigio.

11. In addition to Defendant De Remigio's request for Plaintiff to make fraudulent statements, Defendant De Remigio advised Plaintiff on November 28, 2023, to make

what Plaintiff believed to be racially discriminatory decisions towards these African American hourly employees by targeting them to lead to their termination without cause or justification.

12. Defendant Vinny De Remigio continuously asked Plaintiff to find ways to terminate Ms. Jamison and Ms. Walker because he felt "they were a problem" or "needed to go". Plaintiff believed that race was the motivating factor for Defendant De Remigio.

13. Defendant Vinny De Remigio demanded Plaintiff in her supervisory capacity to overlook performance violations of Caucasian employees who were not meeting performance standards such as Mary Puckett (WF), who consistently failed to meet performance standards on her goals, daily took excessive smoke breaks and lunch breaks in front of Defendant De Remigio, and left her work area without clocking out and without proper authorization from Plaintiff or Defendant De Remigio but was not written up by Defendant De Remigio even though Plaintiff highlighted that Mary Puckett (WF) was not meeting her performance standards goals and violated break times daily unlike African American females Jamison and Walker. (Exhibit 1).

14. Plaintiff adamantly declined to take such action against these African American female employees. Plaintiff realized that Defendant De Remigio's motivation was solely racial in nature and with intent.

15. Plaintiff became an advocate to protect Jamison and Walker from the racially hostile efforts of Defendant De Remigio, therefore, becoming Defendant De Remigio's new target for retaliation and ultimately termination.

16. As a pretextual form of retaliation against Plaintiff for not adhering to Defendant's demands between June of 2023 and September of 2023(90 days) and November of

2023 (60 days), all request being within a close temporal proximity of time, Plaintiff was wrongfully placed on a Performance Improvement Plan (PIP) on December 1, 2023, after she did not wrongfully discharge African American Jennifer Walker, as Defendant Vinny De Remigio had instructed her to terminate Walker in November of 2023. Plaintiff called Defendant De Remigio on November 28, 2023, and told him Walker was not in violation of the attendance policy. Defendant De Remigio became furious and scolded Plaintiff. By that Plaintiff's next Friday morning shift on December 1, 2023, Defendant De Remigio placed Plaintiff on a PIP.

17. This Performance Improvement Plan was a façade that Defendant Vinny De Remigio used to ultimately discharge Plaintiff from her position as M Shift EndFinding/Roving Supervisor. (See Exhibit 2-Plaintiff's Internal Complaint Outlining Chronological Pattern of Harassment and Breach of Contract under December 1, 2023, PIP.)

18. In fact, Plaintiff was forced to attend unnecessary follow-up meetings every two weeks from December 1, 2023, to January 31, 2024, during her Performance Improvement Plan, which had nothing to do with her standard objective job performance. Furthermore, Plaintiff was faced with an abundance of criticism, lack of communication, racial disrespect, and racial micromanagement during every encounter Plaintiff had with Defendant Vinny De Remigio.

19. Through De Remigio's tone and actions, which were racially hostile during Plaintiff's PIP meetings, Plaintiff inferred that her Department Leader, Defendant De Remigio, already had an ulterior motive to terminate her job. (See Exhibit 2).

20. During Plaintiff's time on a Performance Improvement Plan, De Remigio continuously changed Plaintiff's improvement goals during every follow-up meeting as Plaintiff was excelling in all areas that needed improvement. In addition, De Remigio never asked to see a physical copy of the Plaintiff's Action Plan, per the protocol and procedures in the Employee Handbook, until their last meeting, which was a complete modification of the outlined procedures in the Employee Handbook.

21. Plaintiff, in an effort to receive feedback on her Performance Improvement Plan and her Action Plan, Plaintiff emailed a copy of each to Defendant Vinny De Remigio and copied his Supervisor, Justin Munn, in the email on January 16, 2024.

22. To Plaintiff's dismay, she never received a response from either De Remigio or Munn concerning her PIP, clearly demonstrating the besiegement and hostility Plaintiff had to endure.

23. Management, including Defendant Vinny De Remigio and Justin Munn, was aware that several supervisors were having the same performance issues with shift reports and other matters, and failed to offer more training or re-training of employees, but instead found unethical avenues to terminate said employees.

24. To Plaintiff's shock and dismay, Justin Munn never spoke to Plaintiff directly about her Performance Improvement Plan or her employees under her supervision, and took the word of Defendant Vinny De Remigio that Plaintiff's job performance was not improving. Through De Remigio's close connection with Justin Munn, Plaintiff felt she could not report De Remigio's actions because Plaintiff firmly believed Munn would have supported De Remigio over her to expedite her termination.

25. On January 24, 2024, Defendant Vinny De Remigio went on vacation till January 30, 2024. During this time, De Remigio was aware that he was scheduled to have Plaintiff's last follow-up meeting concerning Plaintiff's PIP on January 26, 2024, which would have verified that Plaintiff was meeting the standards under the PIP.

26. As to the PIP, the terms were generalized without any objective standards to be met. Defendant's PIP spoke to generalized non-objective standards such as "demonstration of leadership practice", "development of workforce", and "holding people accountable when necessary". The only objective standard to be met was to "adhere to scheduled work hours for the 12-hour shift". Between December 1, 2023, and January 31, 2024, there was no non-adherence by all M-Shift to schedule work hours. This is the only objective standard that could have been measured by Defendant AGY and specifically Defendant De Remigio, and that standard **was met**.

27. Plaintiff asserts that objective standards for her job performance did exist between June 1, 2023, and May 31, 2024. Plaintiff says there existed five criteria, of which she only had to meet three for successful performance of her job. The criteria for performance that Plaintiff met between June 1, 2023, and January 31, 2024, were never a subject of the need for a PIP. Plaintiff was never evaluated regarding these performance criteria outlined in Exhibit 3, nor questioned by Defendant. This criteria included: 1) Maintain a safe work environment and drive improved safety culture with a target of 40% improvement in the number of LTA's and First Aids in cold fab operations from 2022 for the performance evaluation period of June 1, 2023, until May 31, 2024, 2) Continue to use the New Supervisor Reporting Tools and future revisions. Accurately collect data, report-out promptly at shift end. Immediately

7

address employee issues, 3) Ensure employees are achieving a weekly average rate in excess of 95%. Actively utilize volunteered time off to reduce labor when work is not available for employees to reach target rate. Effectively manage Cold Operations staffing levels to reduce Direct Labor % Overtime to <10.5% (meets), <9.0% (exceeds) for the performance evaluation period, 4) Improve Housekeeping-Lead the New Housekeeping Responsibility Process (coming soon), ensure SFUs, and FEHs are consolidating trucks and returning to proper lanes, completing shift work and not leaving tasks (rework, cleaning, stock preparation) for next shift, 5) Complete company provided computer training and demonstrate acquired skills on shift reports as well as one self-driven problem solving exercise, 6) Ensure all discipline is processed in the required time limits. Use the Standard Discipline Matrix when issuing discipline, and 7) Achieve and sustain DM, MDM, MM, and L-Glass JE Targets by the end of 3Q23 and L2 by the end of 1Q24. Plaintiff contends that the PIP generalized goals are pretextual and outside of the scope of her standardized objective goals for performance is clear evidence that Defendant De Remigio who signed off her 2022 performance goals and established her 2023 performance goals, intended motive was to terminate her on unmeasurable goal attainment in direct retaliation for her advocacy on behalf of her African American staff and her protected activity regarding the race discrimination meted towards her. (Exhibits 3 and 4).

28. However, due to his absence, Plaintiff was unable to have this meeting. This was a direct and blatant breach of Plaintiff's PIP and employment contract by De Remigio, therefore, making Plaintiff's last official follow-up meeting on January 11, 2024.

29. On January 31, 2024, De Remigio returned to work with the sole purpose and determination of terminating Plaintiff from her job through a falsified Performance Improvement Plan that did not reflect Plaintiff's true job performance. Plaintiff was ultimately terminated later that day, leaving Plaintiff appalled and heartbroken.

30. Defendant De Remigio in no way tried to communicate with Plaintiff like other fellow employees or get to know Plaintiff as a Department Leader. In fact, De Remigio deliberately dismissed Plaintiff's concerns about her performance and leadership style numerous times while scrupulously micromanaging Plaintiff's every move until her untimely termination.

31. The Plaintiff is wholeheartedly disappointed she will not be eligible for rehire with AGY Holding Corp., as she has dedicated so much of her time and energy to her position, which she loved.

32. Ultimately, due to Plaintiff's wrongful termination, Plaintiff has suffered lost wages, back pay, severance, and loss of livelihood while experiencing severe hostility, humiliation, disrespect, and embarrassment at the hands of Defendant and its agents.

## FIRST CAUSE OF ACTION

*Race Discrimination and Retaliation in Violation of 42 U.S.C § 1981 as to Defendant AGY Holding Corp. and Department Leader Vinny De Remigio*

33. Plaintiff asserts each and every allegation in the previous paragraphs as if set forth verbatim herein.

34. Plaintiff has a good faith belief that Plaintiff's refusal to write up African American females, Jamison and Walker, under false pretenses to result in the termination of

such African American female employees, was protected activity due to Plaintiff challenging her Defendant De Remigio's unethical policies and procedures.

35. On information and belief, Plaintiff contends that Defendant Vinny De Remigio retaliated against Plaintiff after she refused to write up two African American female employees for poor performance. Plaintiff further contends that once Plaintiff refused to perform such racially motivated decisions regarding such African American female employees' terminations, Defendant Vinny De Remigio retaliated against Plaintiff by placing her on an unnecessary Performance Improvement Plan (PIP) as a pretext for her termination. (Exhibit 3-facts stated above).

36. Defendant Vinny De Remigio continued to retaliate against Plaintiff and created a racially hostile work environment based on Plaintiff's refusal to adhere to Defendant's discriminatory demands against African American female employees Jamison and Walker.

37. Plaintiff contends Defendant AGY condoned the actions of Defendant De Remigio to force Plaintiff's termination by allowing Defendant De Remigio to openly retaliate against Plaintiff continuously from June of 2023 until January 31, 2024, for not adhering to Defendant De Remigio's discriminatory demands against African American employees.

38. The conduct of Defendant's agents was pretextual and designed for the express purpose of retaliating against Plaintiff by placing Plaintiff on an unneeded PIP and fraudulently documenting Plaintiff's "failed improvement" to force Plaintiff's termination.

39. There is a clear and obvious causal connection in close proximity of time between Plaintiff's refusal to meet Defendant De Remigio's racially motivated demands and the adverse action taken by Defendant Vinny De Remigio (Department Leader) and Justin Munn (Supervisor) against Plaintiff, acting in their official capacities, to terminate Plaintiff without cause or justification on January 31, 2024.

40. Defendants' actions were a coordinated effort, designed for the sole purpose of retaliation for Plaintiff's refusal to pretextually terminate two African American females, Jasmine Jamison and Jennifer Walker.

41. Plaintiff asserts that the demands placed upon her to discharge such African American female employees were a pretextual design to put Plaintiff on a PIP so that her untimely termination would follow.

42. Defendant Vinny De Remigio actively worked to undermine Plaintiff's supervisory position by placing her on a PIP, and his conduct was pervasive, hostile, and retaliatory towards Plaintiff.

43. As a direct and proximate result of Defendant's allowance of retaliation, it has caused, continues to cause, and will cause Plaintiff to suffer physical and mental anguish, pain and suffering, loss of enjoyment of life, pecuniary losses, loss of wages, loss of benefits, and back pay and other non-pecuniary losses.

## SECOND CAUSE OF ACTION

*Breach of Contract as to Defendants AGY Holding Corp.*

44. Plaintiff asserts each and every allegation in the previous paragraphs as if set forth verbatim herein.

45. Plaintiff and Defendant entered into a binding and legal contract for employment with AGY Holding Corp. as an M Shift EndFinding/Roving Supervisor beginning on June 11, 2018. Plaintiff accepted the offer of employment and agreed to fulfill the duties of her position in exchange for valuable consideration, her salary, severance, and Defendant's guarantee that she would be protected from retaliation and wrongful termination. Defendant maintained an employment handbook and its mandatory policies and procedures to include Plaintiff's job description and lawful reasons for an employee's PIP. <u>Plaintiff contends that three contracts existed</u>, of which included the Employee Handbook, which has a disclaimer but mandatory language guaranteeing protection against race discrimination and retaliation. In addition, <u>Plaintiff asserts two other contracts existed during her employment</u>. The Performance Evaluation, which does not contain a disclaimer and sets out conditions precedent based upon job performance that Plaintiff satisfactorily met, only to have Defendant breach such, and thirdly, a Performance Improvement Plan, which Plaintiff received on December 1, 2023, with a term certain of January 31, 2024. This PIP contract is also void of a disclaimer and meets all contractual criteria under the law for specific performance. (Exhibits 3 & 4).
46. Plaintiff continuously and diligently worked for Defendant for approximately five and a half years before the unlawful acts of the Defendants began.
47. At all times during her employment, Plaintiff relied on the promises contained in Defendant's handbook, policies and procedures, and governing documents.

48. Plaintiff maintained a stellar work record for her entire employment with AGY Holding Corp. until December 1, 2023, when Plaintiff was wrongfully placed on a PIP.

49. Defendant breached its employment contracts with Plaintiff between May 10, 2023, through January 31, 2024, and its policies and procedures by failing to protect Plaintiff from retaliation and wrongful termination of her job.

50. Defendant, by and through its agents, strived to force Plaintiff to make discriminatory decisions based on race concerning African American female employees.

51. Plaintiff asserts that she was an advocate against race discrimination meted out towards these African American employees, while Caucasian employee Mary Puckett openly violated policy under her supervision, but Defendant De Remigio stopped Plaintiff from disciplining Caucasian employee Puckett for known violations of company policy. (Exhibit 1) which is also void of a disclaimer. Plaintiff unwaveringly declined to adhere to the race discrimination tactics against the African American employees, which is direct retaliation between June 2023 and September 2023 and between September 2023 and January 26 and January 31, 2024, against Plaintiff by placing her on a PIP and ultimately terminating her job.

52. The contract and breach thereof created under the Performance Evaluation instrument for the term June 1, 2023, to May 31, 2024 was a contract of specific performance and was pretextually breached by Defendant AGY and its agent Defendant De Remigio by altering the terms and conditions of this contract with unsubstantiated goals under a pretextual PIP with the express purpose of voiding the work performance criteria of Plaintiff to specifically perform and under the Performance

Evaluation Instrument ultimately leading to her untimely termination in violation of the June 1, 2023, to May 31, 2024 terms of specific performance set for Plaintiff by the Defendant in its contractual Performance Evaluation Instrument.

53. Defendants' adverse actions created undue stress and a hostile work environment based upon Plaintiff's unwavering commitment and motivation to perform her job ethically and fairly.

54. Defendant has unjustifiably failed to perform the employment contract with Plaintiff by not allowing Plaintiff to fulfill her PIP on January 26, 2024, and terminating her job without cause or reasoning after Plaintiff had successfully completed each task on her PIP.

55. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered loss of livelihood, loss of wages, loss of severance and back pay, embarrassment, humiliation, stress, and low self-esteem.

56. Therefore, Plaintiff is entitled to injunctive relief/civil damages.

<u>THIRD CAUSE OF ACTION</u>

*Breach of Contract Accompanied with Fraudulent Intent as to Defendant AGY Holding Corp.*

57. Plaintiff asserts each and every allegation in the previous paragraphs as if set forth verbatim herein.

58. Defendant, by and through their agents, failed to fulfill their obligation under their own written policies, including the above-referenced retaliation and wrongful termination policies, which, together with their promissory and mandatory terms, form a contract with Plaintiff beyond at-will employment.

14

59. Defendant, by and through their agents, has breached the terms thereof by an express intentional design on its part to defraud Plaintiff.

60. In furtherance of such express design, Defendant, through its agents, intentionally and maliciously placed Plaintiff on a Performance Improvement Plan (PIP) to fraudulently undermine Plaintiff's authority and subject her to severe scrutiny and a hostile work environment under the guise of improving Plaintiff's supervisory skills. It became readily apparent to Plaintiff that Defendant's placement of her on a PIP was a pretense to breach Plaintiff's terms and conditions of performance between June 1, 2023, and May 31, 2024, Performance Improvement Plan (Exhibit 4), creating Plaintiff's untimely termination by fraudulently claiming Plaintiff was not meeting her improvement goals for her Active Plan.

61. Defendant De Remigio deliberately and fraudulently avoided Plaintiff's last dated PIP meeting on January 26, 2024, denying Plaintiff the opportunity to complete her PIP, which was an intentional misrepresentation on Defendant De Remigio's part to assert that Plaintiff had not met the goals and standards of her Performance Improvement Plan in furtherance of her pretextual termination. (Exhibit 4).

62. Plaintiff asserts that Defendant De Remigio's intentional avoidance of Plaintiff's Performance Improvement Plan meeting on January 26, 2024, was a breach of Plaintiff's contractual terms and conditions of her Performance Improvement Plan, Performance Evaluation Instrument, both contractual which are time-dated and set out specific performance as to Plaintiff and Defendant De Remigio.

63. Defendants' conduct, by and through their agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

64. As a result of Defendant's fraudulent breaches of contract, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages should be levied against Defendant on account of their unlawful treatment of Plaintiff and fraudulent contractual breaches.

## PRAYER FOR RELIEF

**Wherefore**, the Plaintiffs pray for the following:

1. That Plaintiffs are granted all their claims.

2. That Plaintiff is granted severance, lost wages, and back pay.

3. That Defendants are denied all counterclaims and defenses.

4. For Attorney's fees and cost to prosecute this action

5. For a Jury Trial.

6. For actual, special, consequential, and punitive damages.

7. For such and other awards as this Honorable Court deems just and proper.

Respectfully Submitted,

s/Donald Gist_____  
Donald Gist (13098)  
GIST LAW FIRM, P.A. 4400 North Main Street  
Columbia, South Carolina 29203  
Tel. (803) 771-8007  
Fax (803) 771-0063  
Email: dtommygist@yahoo.com

Attorney for Plaintiff

October 9, 2025